UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID L. COOK,

            Plaintiff,

    v.

MARCOS TORRES, et al.,

            Defendants.

Case No.  19-cv-01370-PJH

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; REFERRAL TO MEDIATION**

Re: Dkt. Nos. 64, 74, 131

      Plaintiff, a former county detainee and current federal prisoner, proceeds with a pro se civil rights complaint under 42 U.S.C. § 1983.  Defendants filed motions for summary judgment on the merits.  Plaintiff has filed multiple oppositions and defendants filed replies.  For the reasons set forth below, the motions are granted in part and denied in part.

## BACKGROUND

      This action continues on the second amended complaint.  Docket No. 24.  Plaintiff alleges that defendants unlawfully searched, arrested and detained him on four separate occasions; specifically, on August 16, 2018, October 15, 2018 and January 9, 2019, by Antioch Police ("Antioch Defendants"),[1] and on October 3, 2018, he was searched, arrested and detained by Concord Police Sergeant Sansen ("Concord Defendant").

      The Antioch Defendants argue that plaintiff was on court-ordered probation with a search clause and there was reasonable suspicion during the August 16, 2018 and October 15, 2018, searches; therefore, there was no violation of his rights.  The Antioch

---

[1] These defendants include officers Cox, Downie, Hynes, Ramirez and Torres and dispatchers Lee, Moore and Scott.

Defendants state that with respect to the third search on January 19, 2019, plaintiff was not on probation, but his claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because plaintiff pled no-contest to charges stemming from that incident.  The Concord Defendant also argues that plaintiff was on court-ordered probation during the October 3, 2018, search, and there was reasonable suspicion to support the search in light of the probation order.

## MOTIONS FOR SUMMARY JUDGMENT

### Legal Standard

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  *Id.*  If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins.  *Id.*

### Facts

A review of the record indicates that the following facts are undisputed unless otherwise noted:

### Probation

This case discusses two different types of probation: court-ordered probation and Postrelease Community Supervision ("PRCS"), also known as AB 109.  PRCS was

2

enacted in 2011 pursuant to Assembly Bill 109.  It is undisputed that plaintiff was not on PRCS during the incidents in this case.  The computer systems in these incidents erroneously stated that he was on PRCS.

It is undisputed that during the August 16, 2018, October 3, 2018 and October 15, 2018 incidents, plaintiff was on court-ordered probation from the Contra Costa County Superior Court in Martinez for a nonviolent misdemeanor.  Concord Defendant Request for Judicial Notice ("RJN") at 4; Antioch Defendants Request for Judicial Notice ("RJN") Exs. A, E.[2]  Part of the probation provided that plaintiff had to "Submit your person, place of residence, storage locker, any vehicle or property under your control to search and seizure at any time of the day or night, with or without warrant, to any police officer."  *Id*. The end date of the court-ordered probation was November 18, 2018.  *Id*.  Previously, the Contra Costa County Superior Court in Pittsburg had ordered plaintiff on probation through September 16, 2016, on a different case.  Docket No. 108, Ex. F.  The Pittsburg court's probation order is not relevant in this case.

**October 3, 2018, Incident with Concord Police**

On October 3, 2018, the Concord Defendant, sergeant Sansen was assigned to a Special Enforcement Team ("SET") for the City of Concord's Police Department.  Motion for Summary Judgment 1 ("MSJ1") Sansen Decl. ¶¶ 2-3.  Sansen was the supervisor of the team.  *Id*. ¶ 3.  The Concord Police received a report of a sexual assault perpetrated by plaintiff, who was staying in a Motel 6 in Concord and had a firearm.  *Id*. ¶ 4.  Officers performed a search of plaintiff's name on the Automated Regional Information Exchange System ("ARIES") to determine if plaintiff was on probation.  *Id*. ¶ 5.  ARIES is a shared information system maintained by Alameda, Solano and Contra Costa Counties.  *Id*. State courts within the counties input probation information, which includes effective and expiration dates, terms and conditions, underlying offenses and court docket numbers.

---

[2] Defendants' requests for judicial notice are granted and the court takes judicial notice of the relevant state court records.  *See Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007)

United States District Court
Northern District of California

United States District Court
Northern District of California

*Id*. ¶ 6.  Local law enforcement personnel have access to ARIES, but they cannot alter data in ARIES generated by other agencies.  Motion for Summary Judgment 2 ("MSJ2") Lee Decl. ¶ 8.  Thus, local law enforcement agencies cannot alter or modify information regarding probation status because that information is entered by courts.  *Id*.

The ARIES search the Concord police officers conducted indicated that on October 3, 2018, plaintiff was on active probation, the terms of which included the search clause.  Sansen Decl. ¶7; Concord Defendant RJN at 4.  Sansen and several other officers responded to the Motel 6 at approximately 10:00 p.m. to conduct a probation search of plaintiff.  Sansen Decl. ¶ 8.

Sansen states he was only present as a supervisor and did not search or assist in searching plaintiff.  *Id*. ¶¶ 9, 10.  Plaintiff disputes this and states that Sansen did instruct another officer to search plaintiff.  Docket No. 104 at 7.  Sansen observed a gun being removed from plaintiff's pocket.  Sansen Decl. ¶ 11.  Another police officer made the decision to arrest plaintiff based on the circumstances, and Sansen's approval was not required to perform the arrest.  *Id*. ¶ 13.  Plaintiff disputes this assertion and maintains that Sansen instructed another officer to handcuff plaintiff and then Sansen told plaintiff he was under arrest.  Docket No. 104 at 7.  Other officers drafted the police reports and Sansen's only responsibility was to approve the reports once they were completed.  Sansen Decl. ¶ 14.  Plaintiff was arrested and taken to jail.  *Id*. ¶ 13; Docket No. 24 at 4.

**Antioch Police**

**August 16, 2018, Incident**

On August 16, 2018, at approximately 7:00 p.m., defendant officer Torres was in a fully marked patrol vehicle patrolling the area of Gentrytown Park in Antioch.  MSJ2 Torres Decl. ¶ 2.  The Gentrytown Park parking lot is commonly used by individuals for the purpose of doing illegal drugs, drinking alcohol and having sex.  *Id*.  At that time there were still numerous children playing in the playground.  *Id*.  Torres observed a Jeep Cherokee parked in the lot with two people inside.  *Id*. ¶ 3.  Torres ran the license plate and fouhd there were no warrants associated with the car and it was currently registered.

4

*Id*. ¶ 4.  Torres did not activate his patrol vehicle's lights or sirens or otherwise interact with the people in the car when he stopped to run the license plate.  *Id*.

While Torres ran the license plate, plaintiff, the driver of the car, exited the vehicle and asked why he was being stopped.  *Id*. ¶ 5.  Torres stated that he was not stopping him but, due to the illegal activity in the parking lot, he asked for plaintiff's identification.  *Id*.  Plaintiff voluntarily provided his California Driver's License.  *Id*.  Plaintiff asked Torres why he was stopping him, and Torres stated that he was out "duck hunting."  Docket No. 104 at 3[3].

Torres contacted the Antioch Police Department dispatcher, who informed him that plaintiff was on PRCS.  *Id*. ¶ 6.  The dispatcher did not state that plaintiff was on court-ordered probation.  Lee Decl. ¶ 6.  Torres later discovered that plaintiff was not on PRCS.  Docket No. 108 at 12.

Data in ARIES indicated that plaintiff was also on court-ordered probation with a search clause.  Torres Decl. ¶ 6.  However, Torres does not allege that he conducted the ARIES search or was aware of plaintiff's court-ordered probation status prior to performing a search of the vehicle and plaintiff.  The police report of this incident indicates that the dispatcher stated plaintiff was on court-ordered probation.  Docket No. 108 at 12.  However, this is incorrect.  Lee Decl. ¶ 6.

Torres informed plaintiff that he was going to conduct a probation search of the vehicle, at which point plaintiff became uncooperative and stated, "[y]ou're not going to search my vehicle."  Torres Decl. ¶ 7.  Based on concerns for his own safety, Torres handcuffed plaintiff and placed him in the patrol vehicle while he searched plaintiff's vehicle.  *Id*.

During the search of the vehicle, Torres discovered a loaded firearm concealed in the center console with an additional ammunition magazine.  *Id*. ¶ 8.  Torres conducted a

---

[3] During an internal affairs investigation into plaintiff's allegations, an internal affairs official heard an audio recording of part of the incident that plaintiff had recorded.  Docket No. 108 at 31.  Torres was heard saying, "When you go duck hunting, you can't shoot all the ducks at once."  *Id*.

records search and learned that the firearm was not registered to plaintiff and that plaintiff had numerous prior felony convictions, including for sale of narcotics, rape, assault with a deadly weapon, burglary, forgery, robbery and for violations for failing to register as a sex offender.  *Id.* ¶¶ 8,9.  Based on all of this information, Torres determined there was probable cause to arrest plaintiff.  *Id.* ¶ 10.  Torres also discovered three counterfeit $100.00 bills on plaintiff.  *Id.*

Defendant officer Hynes arrived on the scene to ensure Torres' safety, but Hynes did not participate in the search of plaintiff or his vehicle.  *Id.* ¶ 13.  Hynes and defendant officer Ramirez handcuffed plaintiff, while Torres conducted a search of plaintiff's vehicle.  Docket No. 24 at 3.

Torres placed plaintiff under arrest, and later the Contra Costa County District Attorney's Office filed a complaint charging plaintiff with the commission of several felonies related to this incident.  Torres Decl. ¶¶ 10, 14.

**October 15, 2018, Incident**

On October 15, 2018, at approximately 3:32 a.m., defendant officer Cox was in a fully marked patrol vehicle conducting a fraud investigation at the Comfort Inn in Antioch.  MSJ2 Cox Decl. ¶ 2.  The Comfort Inn is in a high crime area and is the site of numerous arrests for narcotics violations, prostitution and gang activity.  *Id.* ¶ 6.  The fraud investigation involved a suspect who had been seen with plaintiff, and Cox was informed that plaintiff had attempted to rent a room at the hotel with the suspect.  *Id.* ¶ 3.  Cox was informed that plaintiff's credit card had been declined and that plaintiff later returned to the hotel and used counterfeit money to rent a room.  *Id.*

Cox recognized plaintiff from a prior investigation and saw plaintiff leaving the hotel parking lot in a blue jeep.  *Id.* ¶¶ 4-5.  Cox was aware that plaintiff was subject to a court-ordered probation search clause.  *Id.* ¶ 5.  In light of plaintiff's probation status, his association with the subject of the fraud investigation, his use of forged money, and the high crime activity around the Comfort Inn, Cox believed he had reasonable suspicion to stop, question and search plaintiff.  *Id.* ¶ 7.

6

United States District Court
Northern District of California

1    Cox activated his patrol vehicle's emergency lights and stopped plaintiff.  *Id*. ¶ 8.

2  While still inside his patrol vehicle, Cox checked ARIES and confirmed that plaintiff was

3  on probation and subject to a warrantless search.  *Id*. ¶ 9; Antioch Defendants RJN Exs.

4  A, E.  Plaintiff's probation was active until November 18, 2018.  *Id*.  Cox also contacted

5  dispatch, who stated that plaintiff was on PRCS.  Moore Decl. ¶ 6.

6    Cox directed plaintiff to exit his vehicle so that he could conduct a probation

7  search.  Cox Decl. ¶ 10.  While searching the vehicle, Cox discovered a container

8  containing heroin, a plastic bag with rock cocaine base and an air pistol.  *Id*. ¶ 11.  While

9  searching plaintiff's person, Cox discovered a Visine eyedrop bottle that contained a

10  brownish liquid with a vinegar-like smell that, based on Cox's experience was likely

11  heroin.  *Id*. ¶ 12.  During a search of plaintiff's hotel room at the Comfort Inn, police

12  officers found various narcotics and narcotics paraphernalia, including a glass stem pipe,

13  heroin, crack cocaine, a digital scale and methamphetamine.  *Id*. ¶ 16.  Police officers

14  also found two firearm magazines loaded with eight rounds each of live ammunition.  *Id*.

15  ¶ 16.  Plaintiff was arrested for several felonies.  *Id*. ¶ 19.

16    **January 9, 2019, Incident**

17    On January 9, 2019, at approximately 1:05 a.m., defendant officer Downie was in

18  a fully marked police vehicle patrolling the parking lot of a 7-Eleven convenience store in

19  Antioch.  MSJ2 Downie Decl. ¶ 2.  Downie noticed a blue Jeep parked in a disabled

20  parking space and that the vehicle did not have a disabled license plate or disabled

21  placard displayed.  *Id*.  Parking in a designated disabled parking space by an individual

22  who is not disabled is a violation of California Vehicle Code section 4461.  *Id*. ¶ 3.

23  Downie determined that he had reasonable suspicion to conduct a traffic stop.  *Id*.

24    Downie approached the vehicle, and the driver, later identified as plaintiff, exited

25  the vehicle.  *Id*.  Plaintiff stated that he did not have a disabled placard and provided

26  Downie with a California-issued guard card as a form of identification.  *Id*.  Downie

27  contacted police dispatch and defendant dispatcher Scott responded and stated that

28  plaintiff was on PRCS.  *Id*.  Downie later learned that plaintiff was not on PRCS.  *Id*.

United States District Court
Northern District of California

7

1   For safety reasons, Downie conducted a pat down of plaintiff.  *Id*. ¶ 4.  Downie felt

2   a body armor vest underneath plaintiff's shirt and a small bottle of Visine which contained

3   a brown liquid that Downie suspected was an illegal narcotic.  *Id*.  Downie contacted

4   police dispatch and learned that plaintiff had several felony convictions.  *Id*. ¶ 6.  Downie

5   arrested plaintiff for felon in possession of body armor, heroin and failure to register as a

6   sex offender.  *Id*. ¶¶ 11-12.

7   **Conviction and Sentence**

8   On February 5, 2019, the Contra Costa County District Attorney's Office filed a

9   criminal complaint against plaintiff related to the August 16, 2018, and January 9, 2019,

10  arrests.  Antioch Defendants RJN Ex. D.  On January 19, 2020, plaintiff entered a plea of

11  no-contest to California Penal Code section 31360, felon in possession of body armor,

12  related to the January 9, 2019, arrest.  *Id*. Ex. F.  On January 28, 2020, plaintiff was

13  sentenced to two years' imprisonment related to his plea to possession of body armor.

14  *Id*. Ex. B.

15  On April 11, 2019, plaintiff was indicted in federal court for being a felon in

16  possession of ammunition due to a separate, unrelated arrest on February 3, 2019.  *Id*.

17  Ex. G.  Plaintiff was later sentenced to 41 months' imprisonment on the federal charges.

18  *Id*. Ex. H.  Plaintiff's sentence for the state charges is being served concurrently with the

19  federal charges.  *Id*. Ex. B at 2.

20  **ANALYSIS**

21  **Fourth Amendment**

22  **Legal Standard**

23  The Fourth Amendment prohibits unreasonable searches and seizures.  U.S.

24  Const. amend IV.  The touchstone of all Fourth Amendment analysis is reasonableness,

25  and the reasonableness of a search is determined by weighing the degree to which it

26  intrudes on an individual's privacy against the legitimate government interests in the

27  search.  *Graham v. Connor*, 490 U.S. 386, 395-96 (1989).  The reasonableness of the

28  search is assessed under "the totality of the circumstances."  *United States v. Knights*,

United States District Court
Northern District of California

8

534 U.S. 112, 118 (2001); *United States v. King*, 736 F.3d 805, 808 (9th Cir. 2013).

Under this approach, the reasonableness of a search is determined by "assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Knights*, 534 U.S. at 118-19. A probationer's reasonable expectation of privacy is "significantly diminished." *Id*. at 119-20. In *Knights*, the Supreme Court upheld the warrantless search of defendant's apartment where law enforcement had a reasonable suspicion that the defendant was engaged in criminal activity. *Id*. at 121. The search was conducted pursuant to the terms of defendant's probation which authorized searches of his residence "with or without a search warrant, warrant of arrest or reasonable cause." *Id*. at 114. Balancing the intrusion on defendant's privacy against the government's legitimate interest in the search, the court concluded that the search was reasonable under the totality of the circumstances, with "the probation search condition being a salient circumstance." *Id*. at 118. The Court did not decide whether, and under what circumstances, a suspicionless search pursuant to a search condition would be consistent with the Fourth Amendment. *Id*. at 120 n.6.

In *King*, the Ninth Circuit held that the suspicionless search of probationer's premises was permissible where the defendant, a violent felon, had accepted a suspicionless search condition as part of the probation agreement. 736 F.3d at 810. The court noted that the sentencing judge had "determined that it was necessary to condition the probation on [his] acceptance of the search provision," that the probation order "clearly expressed" the condition, and that the defendant was "unambiguously informed" of it. *Id*. at 808-09. Weighing defendant's diminished privacy interest against the government's interest in discovering criminal activity and protecting potential victims, and taking into account defendant's probation conditions, the court concluded that the search was reasonable. *Id*. at 810. The holding in *King* was limited to individuals on probation for a violent felony and "did not decide whether, and under what circumstances, a suspicionless search condition would be appropriate for 'low level offenders'". *United*

1   *States v. Aviles*, 229 F. Supp. 3d 1039, 1045 (N.D. Cal. 2017).

2          **October 3, 2018 Incident**

3          The Concord Defendant first argues that he took no action that caused any

4   violation of plaintiff's rights because while he was present, he did not participate in the

5   search or the decision to arrest plaintiff.  These assertions are disputed because plaintiff

6   contends that the Concord Defendant was involved in the incident.

7          The Concord Defendant further argues that even if he was involved in the search

8   and arrest, the undisputed evidence shows that there was no constitutional violation.  A

9   review of the undisputed facts demonstrates that there was reasonable suspicion that

10  plaintiff had engaged in criminal activity.

11         As noted above, reasonable suspicion that a probationer subject to a search

12  condition is engaged in criminal activity satisfies the requirements of the Fourth

13  Amendment.  *Knights*, 534 U.S. at 121.  Such reasonable suspicion "is formed by

14  'specific articulable facts which, together with objective and reasonable inferences, form

15  the basis for suspecting that the particular person detained is engaged in criminal

16  activity.'"  *United States v. Job*, 871 F.3d 852, 861 (9th Cir. 2017) (quoting *United States*

17  *v. Colin*, 314 F.3d 439, 442 (9th Cir. 2002)).  In determining whether reasonable

18  suspicion existed, the court considers the totality of the circumstances, including an

19  officer's training and experience.  *United States v. Valdes-Vega*, 738 F.3d 1074, 1080

20  (9th Cir. 2013) (en banc) (further observing that "[p]rotection of the public safety justifies

21  such an approach").  Courts have considered a variety of factually specific contextual

22  considerations in determining whether an officer had reasonable suspicion to perform a

23  search, including: (1) whether any bulges were visible on the suspect, *Job*, 871 F.3d at

24  861; (2) the type of crime that is suspected to have been committed, *id.*; (3) whether the

25  suspect exhibited nervous and evasive behavior, *Illinois v. Wardlow*, 528 U.S. 119, 124

26  (2000); and (4) whether the encounter occurred in a high crime area, *id.*  Additionally, an

27  individual's "status as a probationer means that he begins with a lower expectation of

28  privacy than is enjoyed by a citizen who is not subject to a criminal sanction."  *King*, 736

United States District Court
Northern District of California

United States District Court
Northern District of California

1    F.3d at 808.

2         Concord Police received a report of a sexual assault committed by plaintiff, who

3    was staying in a Motel 6 in Concord and had a firearm.  The individual who submitted the

4    report provided his name and the name of his girlfriend, who was the victim.  Docket No.

5    109 at 2.  It was also discovered that plaintiff was on active probation with a search

6    clause.  All of this occurred and was known prior to the Concord Defendant's interaction

7    with plaintiff.

8         The Concord Defendant has demonstrated reasonable suspicion that plaintiff was

9    involved in criminal activity to warrant the search in light of the report of the sexual

10   assault.  *See United States v. Terry-Crespo*, 356 F.3d 1170, 1173-77 (9th Cir. 2004)

11   (officer had reasonable suspicion to conduct stop based on victim's 911 call because call

12   in which victim identified himself, exhibited sufficient "indicia of reliability").  Moreover,

13   balancing the intrusion on plaintiff's privacy against the Concord Defendant's legitimate

14   interest in investigating the serious crimes of sexual assault and possession of a firearm,

15   the search was reasonable under the totality of the circumstances.  Summary judgment is

16   granted to the Concord Defendant.[4]

17        **October 15, 2018 Incident**

18         Antioch Defendant Cox was conducting a fraud investigation at the Comfort Inn,

19   which is considered a high crime site by the Antioch Police Department, when he

20   observed plaintiff.  Cox learned that plaintiff was associating with the subject of the fraud

21   investigation and had attempted to use counterfeit money.  It is undisputed that Cox

22   recognized plaintiff from a prior investigation and was aware that plaintiff was on

23   probation subject to a search condition.  Based on these circumstances, Cox believed he

24   had reasonable suspicion to stop, question and search plaintiff.

---

[4] To the extent that plaintiff seeks to raise new allegations in his opposition, of excessive force and that officers pointed guns at him, any such request is denied.  The claim against the Concord Defendant was outlined in the screening order.  Plaintiff's motion to amend was already denied.  Docket Nos. 127, 137.

It is undisputed that dispatch stated that plaintiff was on PRCS and did not mention the court-ordered probation.  However, it is also undisputed that Cox used the computer in his patrol car to confirm that plaintiff was on court-ordered probation subject to a search condition.

Plaintiff, in an attempt to indicate disputed facts, presents many allegations that Cox's statements about a fraud investigation are a lie and that Cox never did a computer search in his patrol car.  Plaintiff fails to present any suitable arguments to support these conclusory allegations.  Simply stating that Cox is lying without any support is insufficient. Plaintiff argues that defendants have presented no evidence showing computer records that confirm that Cox used his computer when he states that he did.  However, Cox presented these statements in his declaration under the penalty of perjury.  In addition, the the police report that Cox prepared contemporaneously with the arrest reflects that he knew plaintiff from a prior investigation (he included the investigation number in the report) and that he confirmed plaintiff's probation status in his patrol car.  MSJ2 Cox Decl. at 16.

Conclusory statements, such as that an opponent is lying or that documents have been fabricated – without presentation of any explanation of what portion of a statement or document is false and without offering an explanation of one's view of the true state of events – are insufficient to raise a triable issue.  "When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact."  *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).  While plaintiff has attempted to support other arguments in this motion for summary judgment that defendants are lying, he has not done so for his contentions about Cox.  His conclusory assertions are insufficient to defeat summary judgment.

In light of plaintiff's association with the subject of the fraud investigation, his attempt to use forged money, the high crime nature of the location and plaintiff's probation status, Cox has shown he had reasonable suspicion to stop, question and

search plaintiff. Balancing the intrusion on plaintiff's privacy against the legitimate interest in investigating the fraud allegations concerning the individual with whom plaintiff was associating and that plaintiff had used counterfeit money, the search was reasonable under the totality of the circumstances. Cox is entitled to summary judgment. For these same reasons, summary judgment is also granted to the dispatch operator defendant who communicated with Cox about plaintiff's probation status.

**August 16, 2018 Incident**

Antioch Defendant Torres contends that there was reasonable suspicion for this search; however, he concedes it is a close call and presents few arguments in support. MSJ2 at 26. Instead, he argues that in light of the search condition of plaintiff's probation, the suspicionless search was permissible under the circumstances. Torres notes that there is no controlling law regarding whether a search condition can justify a suspicionless search of a person on probation for a nonviolent crime. It is undisputed that plaintiff was on probation for a nonviolent misdemeanor at the time of the incident. While not binding, Torres urges the court to follow the reasoning of *United States v. Aviles*, 229 F. Supp. 3d 1039 (N.D. Cal. 2017) and find the search valid.[5]

Torres' argument that he was aware of plaintiff's court-ordered probation status prior to the search and arrest is unavailing. This is at best disputed or perhaps inaccurate. The dispatcher did not indicate that plaintiff was on court-ordered probation, as Torres stated in the police report. Furthermore, there are no specific allegations in Torres' declaration that he discovered this fact prior to the search.

---

[5] In *Aviles*, the Northern District addressed the issue of whether a search condition can justify a suspicionless search of a person on probation for a nonviolent crime. *Id*. at 1045-46. In *Aviles*, law enforcement conducted a suspiconless search of the residence of defendant, who was on probation for a nonviolent crime. *Id*. at 1040-41, 1045-46. The defendant's order of probation included a suspiconless search provision. *Id*. at 1040. The court found that the search was reasonable after looking at the suspiconless search condition itself and making an individualized inquiry regarding the search condition and looking at the crime, defendant's criminal history and any other characteristics specific to the defendant. *Id*. at 1044-46.

United States District Court
Northern District of California

1    With respect to this search, arrest and detention, material facts are in dispute;

2    specifically, there is a contest between plaintiff's version of the facts and Torres'

3    explanation.  Viewing the evidence in the light most favorable to plaintiff and taking his

4    sworn allegations as true, he has met his burden and a jury could conclude there was a

5    constitutional violation.  Torres' motion for summary judgment with respect to this incident

6    must be denied.

7    Torres' argument, that the search was valid due to reasonable suspicion and the

8    search clause of plaintiff's probation, lacks merit due to his apparent lack of knowledge of

9    the court-ordered probation.  The only fact to support reasonable suspicion is that the

10   search occurred in a high crime area, but that alone is insufficient in this case.  Nor will

11   the court address the legality of a suspicionless search of a person on probation for a

12   nonviolent crime because it is disputed if Torres was aware of plaintiff's probation status

13   when he conducted the search.

14   Nor is Torres entitled to summary judgment to the extent he was erroneously

15   informed that plaintiff was on PRCS.  Torres does not provide sufficient evidence or

16   allegations regarding any search provisions that are part of PRCS and how they would

17   have applied to plaintiff.  Nor has Torres argued the merits of a suspicionless search for

18   an individual on PRCS.  The court finds that the reasoning of *Aviles* is inapplicable to this

19   case due to the lack of information in the record surrounding searching an individual who

20   is on PRCS.  For all these reasons, summary judgment is denied as to Torres.

21   The only allegations against defendant officers Hynes and Ramirez are that they

22   handcuffed plaintiff while Torres conducted a search of the car.  It is undisputed that

23   these defendants were not involved in Torres' decisions to conduct the search and arrest

24   of plaintiff.  They are entitled to summary judgment.[6]

---

[6] The court will address the allegations against defendant dispatcher Lee below while discussing qualified immunity.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**Heck v. Humphrey**

The Antioch Defendants argue that plaintiff's allegations regarding the January 9, 2019, arrest for body armor are barred by *Heck* because plaintiff pled no-contest to possession of the body armor and was sentenced to two years' imprisonment.

**Legal Standard**

The Supreme Court held in *Heck*, 512 U.S. at 486-87, that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."

The Ninth Circuit has repeatedly treated no-contest pleas in California state court as convictions when applying the *Heck* doctrine. *See Szajer v. City of Los Angeles*, 632 F.3d 607, 609-12 (9th Cir. 2011); *Ove v. Gwinn*, 264 F.3d 817, 823 n.4 (9th Cir. 2001); *see also Radwan v. Cnty. of Orange*, 519 F. App'x 490, 490-91 (9th Cir. 2013) ("We have repeatedly found *Heck* to bar §1983 claims, even where the . . . prior convictions were the result of guilty or no-contest pleas.").

To be sure, a few months after *Szajer* was decided, the Ninth Circuit issued a decision in *Lockett v. Ericson*, 656 F.3d 892 (9th Cir. 2011) which contained *dicta* that could be interpreted as inconsistent with *Szajer*. In *Lockett* the Ninth Circuit reversed the district court, which had held that plaintiff's complaint was *Heck* barred. *Id.* at 893. Although the Ninth Circuit noted that Lockett's conviction was obtained as the result of his no-contest plea and that "[h]e was not tried, and no evidence was introduced against him," *Id.* at 896-97, the court found that Lockett's conviction did "not in any way depend on the legality of the search of his home," and that his conviction therefore did not bar his § 1983 suit. *Id.* at 897. In short, if he were to succeed in challenging the legality of the search, that would not undermine the conviction. Hence, despite the court's reference to

15

the no-contest plea, the decision did not turn on the fact that it was a no-contest rather than a guilty plea.  Tellingly, the court did not address or distinguish *Szajer*.  *See Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 645 (9th Cir. 2018) (*Heck* did not bar the plaintiff's search and seizure claims in his civil rights action because he pleaded guilty to a conspiracy charge and no evidence was produced against him at his plea hearing).

No Ninth Circuit case has treated a no-contest plea differently than a guilty plea with respect to *Heck*.  As one district court has summarized:

> Taken together, the precedent discussed above indicates that *Heck's* inapplicability to certain cases involving [ ] pleas is essentially an application of the harmless error exception first recognized in *Heck* itself, or more generally, the rule that success on a claim must necessarily imply the invalidity of the conviction in order to be barred by *Heck*.  Where an alleged constitutional violation relates only to evidence that might or might not be admissible despite the error, might or might not be necessary to convict the defendant at trial, and regardless is not necessary for the defendant to enter a [ ] plea, then a successful claim that the evidence was obtained in violation of the Constitution would not necessarily imply the invalidity of the conviction.  Accordingly, in considering whether *Heck* bars claims of other constitutional violations by defendants who have pled [ ] to crimes, a court must look to what effect such a violation would necessarily have on the validity of the conviction.

*Farrow v. Lipetzky*, No. 12-cv-6495 JCS, 2017 WL 1540637, at *9 (N.D. Cal. April 28, 2017).   The question under *Heck* is whether subsequent civil rights claims are inconsistent with the conviction and thus need to be dismissed to avoid implying the invalidity of the conviction.

The Antioch Defendants argue that plaintiff's allegations in this civil rights case with respect to the January 9, 2019, incident are fundamentally inconsistent with his plea and conviction and are therefore barred by *Heck*.  In this action plaintiff argues that he was stopped and searched by defendant Downie on January 9, 2019, without probable cause and that the search violated his Fourth Amendment rights.  It is undisputed that defendant discovered the body armor during a pat-down search of plaintiff.  It is also undisputed that plaintiff pled no-contest to possession of the body armor.

1       Plaintiff's allegations in this civil rights action, that he was illegally searched, would

2  imply if successful that his arrest and plea were invalid.  This implication which would

3  contravene *Heck*.  Plaintiff argues that he is not challenging the fact that he possessed

4  body armor in this civil rights action.  Docket No. 104 at 12.  He contends that he is only

5  challenging the search that led to his arrest for possession of heroin and failure to

6  register as a sex offender and that these charges were dismissed as part of the plea

7  deal.  *Id*.

8       It is undisputed that it was the same search of plaintiff that uncovered the body

9  armor, heroin and the fact that he had failed to register as a sex offender.  Plaintiff's

10  contention that he can circumvent *Heck* by only challenging the aspects of the search to

11  which he did not plead no-contest lacks merit.

12       In *Szajer*, law enforcement executed a search warrant at defendants' business

13  and home and seized illegal firearms at both locations.  632 F.3d at 608.  The defendants

14  pled no-contest to the firearms found at their home.  *Id*.  The defendants later filed a

15  lawsuit against the law enforcement officers arguing that the search of the business was

16  unlawful.  *Id*.  The defendants argued that they were not challenging the seizure of the

17  weapons at their home, for which they pled no-contest; rather, they were only challenging

18  the seizure of the guns at the business for which they were not convicted, and *Heck* did

19  not apply.  *Id*. at 612.  The Ninth Circuit affirmed the district court in finding the action was

20  barred by *Heck* and noted that the searches of both locations were based on the same

21  search warrant.  *Id*.  The Circuit found that defendants had an opportunity to challenge

22  the search in the criminal proceeding but failed to do so and that if their civil rights case

23  succeeded it would challenge the validity of the entire search warrant, thus implying there

24  was no probable cause for the search.  *Id*.  As a result, the claim was *Heck* barred.  *Id*.

25       Here, plaintiff challenges the lawfulness of the search of his person that led to the

26  seizure of the body armor and heroin and the discovery that he had failed to register as a

27  sex offender.  While plaintiff only pled no-contest to possessing the body armor, all three

28  discoveries arose from the same search, and a finding that the search that resulted in the

United States District Court
Northern District of California

1    discovery of the heroin or sex offender information was invalid would call into question

2    the body armor plea.  Similar to *Szajer*, plaintiff's claim is barred by *Heck* and summary

3    judgment is granted to Antioch Defendants Downie and Scott for this claim.

4         **Qualified Immunity**

5         The defense of qualified immunity protects "government officials . . . from liability

6    for civil damages insofar as their conduct does not violate clearly established statutory or

7    constitutional rights of which a reasonable person would have known."  *Harlow v.*

8    *Fitzgerald*, 457 U.S. 800, 818 (1982).  The rule of "qualified immunity protects 'all but the

9    plainly incompetent or those who knowingly violate the law.'"  *Saucier v. Katz*, 533 U.S.

10   194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Defendants can

11   have a reasonable, but mistaken, belief about the facts or about what the law requires in

12   any given situation.  *Id*. at 205.  A court considering a claim of qualified immunity must

13   determine whether the plaintiff has alleged the deprivation of an actual constitutional right

14   and whether such right was clearly established, such that it would be clear to a

15   reasonable officer that his conduct was unlawful in the situation he confronted.  *See*

16   *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part

17   test that required determining a deprivation first and then deciding whether such right was

18   clearly established, as required by *Saucier*).  The court may exercise its discretion in

19   deciding which prong to address first, in light of the particular circumstances of each

20   case.  *Pearson*, 555 U.S. at 236.

21        With respect to the October 3, 2018, and October 15, 2018, incidents, the court

22   has not found a constitutional violation, and, even if there was a violation, defendants

23   would be entitled to qualified immunity.  It would not be clear to reasonable police officers

24   that conducting a search of a probationer subject to a search clause, when there was

25   reasonable suspicion, as described above for each incident, would be a constitutional

26   violation.[7]

27   _____

28   [7] Plaintiff is barred from proceeding with the January 9, 2019, incident pursuant to *Heck*;
     therefore, the court need not address qualified immunity for that incident.

United States District Court
Northern District of California

United States District Court
Northern District of California

With respect to the police dispatcher defendants, even assuming they committed a constitutional violation by relaying information that was later discovered to be erroneous, they are also entitled to qualified immunity.  "'Where an officer has an objectively reasonable, good-faith belief that he is acting pursuant to proper authority he cannot be held liable if the information supplied by other officers turns out to be erroneous.'" *Torres v. City of Los Angeles*, 548 F.3d 1197, 1212 (9th Cir. 2008) (quoting *Motley v. Parks*, 432 F.3d 1072, 1082 (9th Cir. 2005) (en banc), *rev'd on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012) (en banc)).  In this case it was objectively reasonable for the dispatch officers to rely on the information from ARIES regarding plaintiff's probation status.  It is undisputed that ARIES is a shared information system maintained by several counties and that the police departments in this case can access but cannot modify or alter information input by state courts regarding the probation status of an individual.  Thus, all police dispatcher defendants are entitled to qualified immunity.

With respect to defendant Torres and the August 16, 2018 incident, the court found that Torres was not entitled to summary judgment on the merits.  With respect to that incident, when viewed in the light most favorable to plaintiff, it would be clear to any reasonable police officer that a constitutional violation would occur by searching, detaining and arresting an individual in the circumstances Torres encountered.  There was no probable cause to search plaintiff, nor was there reasonable suspicion, even assuming Torres had been aware of plaintiff's probation status, which is disputed.  Torres is not entitled to qualified immunity.

With respect to defendant police officers Hynes and Ramirez's involvement in the August 16, 2018 incident, the court has not found a constitutional violation, and, even if there was a violation, defendants would be entitled to qualified immunity.  It would not be clear to reasonable police officers that handcuffing plaintiff after a different police officer determined a search was necessary would be a constitutional violation.  See *Motley*, 432 F.3d at 1081 ("effective and efficient law enforcement requires cooperation and division of labor to function.  For that reason, law enforcement officers are generally entitled to

19

rely on information obtained from fellow law enforcement officers.").

**Discovery**

Plaintiff previously requested subpoenas that the court deferred on issuing until ruling on the summary judgment motion.  Docket No. 93.  Plaintiff sought video footage from a surveillance camera at a 7-11 convenience store with respect to the January 9, 2019, incident, and data, phone records and audio from a mobile phone application recording from the Metro PCS cellular phone company related to the August 16, 2018, incident.

With respect to the January 9, 2019 incident, the court has found the claim barred by *Heck*; therefore, the video footage is immaterial.  With respect to the August 16, 2018 incident, plaintiff sought to introduce an audio of the incident to show that the dispatcher did not say he was on court-ordered probation and that Torres made statements about going duck hunting.  As noted above, the court found plaintiff's allegations to be undisputed.  Therefore, the audio was not necessary for purposes of the motion for summary judgment.  The court will reconsider plaintiff's efforts to obtain this audio at a future date, after settlement discussions.

Plaintiff and the Antioch Defendants also submitted many filings regarding the dispatch recordings as described in the court's June 11, 2021, order.  Docket No. 127.  Plaintiff has since indicated that he has listened to the recordings and the court has considered his arguments.  Docket No. 139.[8]

**Referral to Pro se Prisoner Mediation Program**

This case appears to be a good candidate for the court's mediation program.  Good cause appearing therefore, this case is now referred to Magistrate Judge Illman for mediation or settlement proceedings pursuant to the Pro Se Prisoner Mediation Program.

---

[8] The court notes that the relevant substance of the recordings was completely and accurately reflected in the declarations of the dispatcher Antioch Defendants that was part of their motion for summary judgment filed on January 8, 2021.  Plaintiff has had access to these declarations for many months and extensively cited to them and the substance of the recordings in his opposition filings.

United States District Court
Northern District of California

The proceedings will take place within 120 days of the date this order is filed.  Magistrate Judge Illman will coordinate a time and date for mediation or settlement proceedings with all interested parties and/or their representatives and, within five days after the conclusion of the proceedings, file with the court a report for the prisoner mediation or settlement proceedings.

Plaintiff must attend and participate in the mediation or settlement conference proceedings.  The conference may be set up so that he will appear in person, by videoconference or by telephone and he must attend whatever format Magistrate Judge Illman chooses.  Plaintiff is cautioned that he may be sanctioned for failure to comply with an order to participate in a mediation or settlement conference, and such sanctions may include dismissal of part or all of the action.  *See* Fed. R. Civ. P. 16(a), (f), and 41(b).  Plaintiff does not have to settle, but he must participate.

## CONCLUSION

1.  For the reasons set forth above, Concord Defendant Sansen's motion for summary judgment (Docket No. 64) is **GRANTED**.  Sansen is dismissed with prejudice from this action.  Plaintiff's request for sanctions is **DENIED**.

2.  For the reasons set forth above, the Antioch Defendants' motion for summary judgment (Docket No. 74) is **GRANTED in part and DENIED in part**.  All defendants except Torres are dismissed from this action with prejudice.  This action continues against Torres with respect to the August 16, 2018, incident.

3.  Concord Defendant's motion (Docket No. 131) for the court not to consider plaintiff's further oppositions is **DENIED**.  The court has reviewed and considered all of plaintiff's filings in light of his status as a pro se incarcerated prisoner.

4.  This action is now referred to Magistrate Judge Illman for mediation or settlement proceedings pursuant to the Pro Se Prisoner Mediation Program.  The clerk shall **SEND** a copy of this order to Magistrate Judge Illman.  This case is **STAYED** and the clerk is requested to **ADMINISTRATIVELY CLOSE** this case until further order from the court.

**IT IS SO ORDERED.**

Dated: August 13, 2021

_/s/ Phyllis J. Hamilton_

PHYLLIS J. HAMILTON
United States District Judge

United States District Court
Northern District of California